UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

GUADALUPE GUTIERREZ,

              Plaintiff,

v.

PNC MORTGAGE, a Division of PNC Bank National Association; PNC BANK NATIONAL ASSOCIATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; NATIONAL CITY MORTGAGE CORPORATION; and DOES 1 through 50, inclusive,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No. 10cv01770 AJB (RBB)

**ORDER GRANTING MOTIONS TO DISMISS ON THE MERITS AND DENYING  IN PART, AS MOOT, WHERE PLAINTIFF HAS WITHDRAWN CERTAIN CLAIMS**

[Doc. Nos. 14, 15]

      Presently before the Court are Defendants PNC Bank, National City Mortgage, PNC Mortgage, and GMAC Mortgage, LLC's motions to dismiss Plaintiff's First Amended Complaint.  (Doc. Nos. 14, 15.)  Plaintiff filed an opposition to each motion to dismiss, and the Defendants each filed a reply.  For the following reasons, the motions are **GRANTED**.  Because Plaintiff has withdrawn the second and fourth causes of action, the motions to dismiss are **DENIED** as moot with regard to those claims.

**I.**

**BACKGROUND**

      This action arises out of Plaintiff Guadalupe Gutierrez's execution, and attempted modification, of a refinancing loan by Defendants PNC Mortgage and PNC Bank National Association (collectively

11cv1322

"PNC"), Defendant Mortgage Registration Systems ("MRS"), Defendant National City Mortgage

("National City"), and Defendant GMAC Mortgage, LLC ("GMAC").[1]

In or about January 2004, Plaintiff purchased, and currently owns, residential real property

located at 1101 Turquoise Street, Calexico, California 92231 (the "Property"). (First Amended

Complaint ("FAC") ¶ 22.) In or about March 2006, Plaintiff obtained a loan (the "Loan") in the

amount of $333,000.00 from National City to refinance the previously existing loan.[2] (FAC ¶ 40.) The

Loan was secured by a deed of trust against the Property. (FAC ¶ 40; Doc. 14-2, Exh. 1.)

Plaintiff alleges that in September 2006, Defendants National City and PNC knew that Plaintiff

would not be able to repay the Loan. (FAC ¶ 40.) In or about September 2008, Plaintiff allegedly

discovered that he had an adjustable rate loan. (FAC ¶ 23.) When he contacted National City to

complain about the Loan, Plaintiff alleges that National City refused to provide him documents

regarding his Loan and told him that his loan could only be modified if he stopped making payments.

(FAC ¶¶ 24-25.) Six months after Plaintiff stopped making his loan payments, National City allowed

Plaintiff to make trial modification payments. (FAC ¶¶ 25-26.) During this modification process,

Plaintiff alleges that the Loan was subsequently transferred from National City to GMAC, and then

transferred back to National City, at which point PNC either purchased National City or purchased the

---

[1]Plaintiff erroneously sued GMAC Mortgage, LLC as GMAC Wholesale Mortgage Corporation.

[2]Defendants PNC, National City, and GMAC request judicial notice of several documents pertaining to the Loan, including a Deed of Trust, a Notice of Default, a Notice of Trustee's Sale, and a Trustee's Deed Upon Sale. (Doc. 15-2, Exhs. 1-4; Doc. 14-2, Exhs. 1-3, 5.) Defendant GMAC also requests judicial notice of the Assignment of Deed of Trust. (Doc. 14-2, Exh. 4.) Pursuant to Rule 201, a court may take judicial notice of adjudicative facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). Moreover, a district court may consider matters subject to judicial notice in ruling on a motion to dismiss. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Facts are indisputable, and thus subject to judicial notice, only if they are either "generally known" under Rule 201(b)(1) or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned" under Rule 201(b)(2).

Plaintiff argues that the Deed of Trust and Notice of Default, respectively, have not been authenticated. (Doc. No. 20 at 8:15-17, 12:12-14.) However, Plaintiff simply asserts that PNC's request "in no way establishes authentication of the exhibit," without providing any explanation for why he disputes the authenticity of a publicly recorded document. (Doc. 20 at 8:15-16.) At the same time, Plaintiff cited to the Deed of Trust in his Opposition to Defendant GMAC's Motion. (Doc. 19 at 15:14-22.) These documents are public records and are capable of accurate and ready determination. *See, e.g.*, *Long v. Deutsche Bank Nat. Trust Co.*, No. 10-00359 JMS/KSC, 2011 WL 5079586, *1 n.1 (D. Haw. Oct. 24, 2011); *Bernadino v. Wells Fargo Bank*, No. C11-03738 SI, 2011 WL 5117398, *2 (N.D. Cal. Oct. 27, 2011); *Wells v. Cal. Home Loan Solutions*, No. 07cv1040 J (AJB), 2007 WL 2915059, *4 n.1 (S.D. Cal. Oct. 4, 2007). The Court finds that these documents are judicially noticeable and grants Defendants PNC, National City, and GMAC's request.

11cv1322

loan from National City.  (FAC ¶¶ 27-29, 32.)  Plaintiff continued making loan payments during this time, until PNC or National City refused to accept the payments in May 2010.  (FAC ¶¶ 32-33.)

A Notice of Default, indicating that Plaintiff was in default in the amount of $10,503.90 as of January 16, 2009, was publicly recorded against the Property on January 20, 2009.  (Doc. 14-2, Exh. 2.)   A Notice of Trustee's Sale, recorded on May 15, 2009, stated that the Property would be sold at a foreclosure sale, to be held on June 3, 2009, for $356,842.92.  (Doc. 14-2, Exh. 3.)  Plaintiff claims that he had no notice that his home was in danger of foreclosure and that he only learned of the foreclosure when a realtor went to his home and informed him of it.  (FAC ¶¶ 35-36.)  Plaintiff filed his Complaint on June 25, 2010.  (Complaint, Doc. No. 1.)  Then, a Trustee's Deed Upon Sale, recorded on July 23, 2010, indicated that the Property had been sold at an auction on May 14, 2010.  (Doc. 14-2, Exh. 5.)

## II.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim."  *SmileCare Dental Grp. v. Delta Dental Plan of Cal*., 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).  However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Nevertheless, the reviewing court need not accept "legal conclusions" as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–50 (2009).  It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.  In cases involving multiple defendants, well-pleaded allegations require the plaintiff to, "at a minimum, identify the role of *each defendant* in the alleged fraudulent scheme." *Yazdanpanah v. Sacramento Valley Mortg. Grp*., No. C

1    09-02024, 2009 U.S. Dist. LEXIS 111557, at *8 (N.D. Cal. Dec. 1, 2009); *see also Swartz*, 476 F.3d at

2    764-65 ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but

3    'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . .'").  The

4    court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing

5    all reasonable inferences in favor of the nonmoving party.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th

6    Cir. 2009) (citations omitted).

7                                                    **III.**

8                                              **DISCUSSION**

9            Defendants PNC, National City, and GMAC argue that Plaintiff's allegations fail to state a claim

10   upon which relief can be granted, in violation of Rule 12(b)(6).  This Court agrees with Defendants for

11   the reasons discussed below.

12   *1.  Predatory Lending Practices*

13           Plaintiff's first cause of action against Defendants PNC and National City alleges predatory

14   lending practices.  (FAC ¶¶ 43-46.)  Section 4970 of the Predatory Lending Act ("PLA") in the

15   California Financial Code sets forth various definitions that govern the activities in which lenders may

16   engage.  Cal. Fin. Code § 4970 (2006).  Subsection (b) of the PLA defines a "covered loan" as a

17   "consumer loan in which the original principal balance of the loan does not exceed the most current

18   conforming loan limit for a single-family first mortgage loan ... [if] [t]he total points and fees payable by

19   the consumer at or before closing for a mortgage or deed of trust will exceed 6 percent of the total loan

20   amount."  *Id.* § 4970(b)(2).  Even if Plaintiff's loan is a "covered loan" under this definition, section

21   4970 simply provides basic statutory definitions and does not prohibit any action by a lender.  Instead,

22   the predatory practices that are prohibited by the Act are listed in section 4973.  *See* Cal. Fin. Code §

23   4973; 12 Cal. Real Est. § 36:29 (3d ed. 2011).  Although a prohibited practice must involve a "covered

24   loan" under the statute, Plaintiff has failed to allege any violation of the Act as described in section

25   4973.

26           **a.  One-Year Statute of Limitations Under Section 340**

27           Even if Plaintiff had properly alleged a claim under the Act, it would be barred by the applicable

28   statute of limitations.  Section 340 of the California Code of Civil Procedure provides a one-year

                                                                                                    11cv1322

1   limitation period for penalty statutes unless the applicable statute provides a different limitation period.

2   Cal. Code Civ. Proc. § 340 (2003); *see id.* § 338(a) (providing that three-year statute of limitations

3   applies to statutes not involving penalties). Because section 4977 permits a statutory penalty and

4   section 4978 permits a civil remedy for violations under section 4973 but does not provide a separate

5   statute of limitations, the one-year period under section 340 applies. *See* Cal. Code Civ. Proc. § 340.

6   Plaintiff ignores the penalty nature of section 4973 and argues that the one-year limitation period

7   does not apply because he is not seeking a penalty or forfeiture. Not only does the FAC fail to

8   specifically identify the type of damages Plaintiff seeks, but the majority of district courts have applied

9   the one-year limitation period under section 340 to allegations of predatory lending. *See, e.g.*, *Altman v.*

10  *PNC Mortg.*, No. CV F 11-1807 LJO MJS, 2012 WL 174966, *19 (E.D. Cal. Jan. 20, 2012); *Lopez v.*

11  *GMAC Mortg.*, No. CV F 11-1795 LJO JLT, 2011 WL 6029875, *20 (E.D. Cal. Dec. 5, 2011); *Manosca*

12  *v. Wachovia Mortg.*, No. C 11-2183 SI, 2011 WL 2970824, *9 (N.D. Cal. July 20, 2011); *DeLeon v.*

13  *Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1127-28 (N.D. Cal. 2010). Plaintiff's claim arises out of

14  the loan origination and accrued at the loan's consummation in March 2006, which renders untimely the

15  filing of the complaint on June 25, 2010.

16  **b. Equitable Tolling Under Section 338**

17  Even assuming that section 338 applies, Plaintiff asserts that he is also entitled to delayed

18  accrual under the discovery rule. *See Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994)

19  (discussing the difference between the discovery rule and equitable tolling under California law). A

20  cause of action accrues "when the wrongful act is done and not at the time of plaintiff's discovery."

21  *Prudential Home Mortg. Co. v. Superior Court*, 66 Cal. App. 4th 1236, 1246 (1998). But under the

22  doctrine of delayed discovery, accrual is delayed "until the plaintiff discovers or should have discov-

23  ered, through the exercise of reasonable diligence, all the facts essential to the cause of action." *Id.*

24  (citing *Leaf v. City of San Mateo*, 104 Cal. App. 3d 398, 407 (1980)).

25  However, the discovery rule does not salvage Plaintiff's claim because Plaintiff fails to

26  sufficiently allege why he could not have discovered the alleged wrongdoing earlier. Any claims that he

27  lacked access to the publicly recorded loan documents or that he failed to read his loan documents

28  would be insufficient. *See 24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1215 (1998)

1   (noting the general rule that the exercise of "reasonable diligence requires the reading of a contract

2   before signing it").  The Court finds that Plaintiff's allegations do not supply the requisite specificity to

3   justify application of the discovery rule.  *See, e.g.*, *Casualty Ins. Co. v. Rees Inv. Co.*, 14 Cal. App. 3d

4   716, 719-20 (1971).  However, the Court does not necessarily assume that the statute of limitations

5   started to run in March 2006, when the loan was refinanced.  Plaintiffs' amended complaint should

6   plead facts supporting application of the discovery rule with specificity, and it should address when the

7   statute of limitations began to run.  The Court therefore GRANTS Defendants PNC and National City's

8   motion to dismiss the first cause of action with leave to amend.

9   *2.  Count Two: Negligent Infliction of Emotional Distress*

10          In his opposition to each motion to dismiss, Plaintiff withdraws his cause of action for negligent

11  infliction of emotional distress.  (Doc. 19 at 4; Doc. 21 at 5.)  Based thereon, that portion of the pending

12  motions is DENIED as moot.

13  *3.  Count Three: Negligence*

14          Plaintiff's third cause of action alleges that Defendants PNC, National City, and GMAC

15  negligently breached their duty of care to the Plaintiff throughout the loan transaction and modification

16  process.  (FAC ¶¶ 52-57.)  In order to establish negligence, Plaintiff must first establish that Defendants

17  owed Plaintiff a legal duty of care.  *See, e.g.*, *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001).  As a

18  general rule under California law, "a financial institution owes no duty of care to a borrower when the

19  institution's involvement in the loan transaction does not exceed the scope of its conventional role as a

20  mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991)

21  (citing *Wagner v. Benson*, 101 Cal. App. 3d 27, 34-35 (1980)).  However, a lender may owe a borrower

22  a duty of care if "the lender 'actively participates' in the financed enterprise 'beyond the domain of the

23  usual money lender.'"  *Id.* (quoting *Connor v. Great Western Sav. & Loan Ass'n*, 69 Cal. 2d 850, 864

24  (1968)).

25          To the extent that Plaintiff alleges that Defendants owed him a duty in approving the original

26  loan (FAC ¶¶ 40, 52-57), a lender owes a borrower no duty of care in approving a loan even where there

27  was a foreseeable risk that the borrower would be unable to repay the loan.  *Wagner*, 101 Cal. App. 3d

28  at 35.  Just as approving an initial loan is within a lender's conventional role, loan modification is also

"intimately tied to Defendant's lending role." *Karimi v. Wells Fargo*, No. Cv 11-00461-RGK (OPx), 2011 U.S. Dist. LEXIS 47902, at *7 (C.D. Cal. May 4, 2011).  Moreover, a lender has no duty to forego foreclosure or to modify the loan. *Dooms v. Fed. Home Loan Mortg. Corp.*, *12 (E.D. Cal. Mar. 31, 2011); *see also Sierra-Bay Fed. Land Bank Ass'n v. Superior Court*, 227 Cal. App. 3d 318, 334 (1991) ("It is simply not tortious for a commercial lender . . . to foreclose on collateral when a debt is not paid.").  Consequently, Plaintiff's allegations regarding Defendants' conduct arising from loan modification attempts fail to state a cause of action for negligence because such conduct is within a lender's traditional role.

However, even where a lender's actions are confined to their traditional scope, the court in *Nymark* established only a general rule regarding the existence of a lender's duty of care.  231 Cal. App. 3d at 1098.  The *Nymark* court explained how a duty may still exist:

> [I]n California, the test for determining whether a financial institution owes a duty of care to a borrower-client 'involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's duty, and [6] the policy of preventing future harm.

*Id.* (quoting *Connor*, 69 Cal. 2d at 865).

The FAC lists the various ways that Defendants allegedly breached their duty to Plaintiff, but does not allege any facts to suggest that a duty existed.  Even if a special duty exists under the test set forth in *Nymark*, Plaintiff's third cause of action fails to address the application of these factors to the Defendants.  Plaintiff's conclusory assertion that Defendants "had a duty to exercise reasonable care and skill in performing their duties for the benefit of Plaintiff, their principal, in the loan transaction" is insufficient because the Court need not accept Plaintiff's legal conclusions as true.  *See Iqbal*, 129 S. Ct. at 1949.  Accordingly, the Court GRANTS Defendants PNC, National City, and GMAC's motions to dismiss the third cause of action with leave to amend.

### 4. Count Four: RICO

In his Opposition to each motion to dismiss, Plaintiff withdraws his cause of action based on RICO.  (Doc. No. 19 at 6; Doc. No. 20 at 6.) Based thereon, that portion of the pending motions is DENIED as moot.

*5. Count Five: TILA*

Plaintiff alleges that Defendants PNC and National City have violated the Truth in Lending Act ("TILA").  (FAC ¶¶ 66-77.)  TILA promotes consumers' "informed use of credit" by requiring "meaningful disclosure of credit terms."  15 U.S.C. § 1601(a).  The statute provides consumers with two causes of action for violations of the disclosure requirements—one for damages, and one for rescission of a loan agreement.  *Id.* §§ 1635, 1640.  Defendants assert that Plaintiff's claims for damages and rescission are barred by the statute of limitations.

**a. TILA Claim for Damages**

An action to recover damages under TILA is subject to a one-year statute of limitations that begins to run on the day the loan is consummated because the borrowers could have discovered the alleged disclosure violations and discrepancies at that time.  *See* 15 U.S.C. § 1640(e); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011); *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).  On the face of the FAC, Plaintiff's claim is barred by the statute of limitations because the loan was consummated in March 2006, but Plaintiff did not file suit under June 25, 2010.  *See Cervantes*, 656 F.3d at 1045.

However, the limitations period on a TILA damages claim may be equitably tolled when "despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim."  *Cervantes*, 656 F.3d at 1045 (quoting *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193 (9th Cir. 1996)).  In a TILA action, equitable tolling will not apply if the borrower has had a reasonable chance to discover the fraud or nondisclosures that form the basis of the TILA action.  *King*, 784 F.2d at 915.  In *Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir. 1996), the Ninth Circuit refused to permit equitable tolling where "nothing prevented [the borrower] from comparing the loan contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements."  Similarly, the Ninth Circuit in *Cervantes* refused to allow equitable tolling where the lender failed to provide copies of loan documents in Spanish to the plaintiff borrowers, who only spoke Spanish.  656 F.3d at 1040.  The court reasoned that the borrowers had failed to "allege circumstances beyond their control that prevented them from seeking a translation of the loan documents that they signed and received."  *Id.*

1   //

2          Like the plaintiffs in *Hubbard* and *Cervantes*, Plaintiff has failed to allege circumstances beyond

3   his control that prevented him from discovering the type of loan he signed within the limitations period.

4   Rather, Plaintiff alleges that Defendants failed to make required written disclosures in a timely manner,

5   placed prohibited terms in the loan document, and failed to disclose finance charge details and the

6   correct annual percentage rate.  (FAC ¶ 70.)  Plaintiff had notice of any nondisclosures and prohibited

7   terms at the time he signed the documents, or shortly thereafter, when he began making payments on the

8   loan.  *See Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003); *Frison v. WMC Mortg.*

9   *Corp.*, No. 09cv1733-LAB (NLS), 2011 WL 4571753, at *3 (S.D. Cal. Sept. 39, 2011); *Copeland v.*

10  *Lehman Bros. Bank, FSB*, No. 09cv1774-WQH-RBB, 2011 WL 9503, at *6-7 (S.D. Cal. Jan. 3, 2011).

11  Accordingly, under the Ninth Circuit's reasoning in *Hubbard* and *Cervantes*, Plaintiff has not alleged

12  sufficient facts to demonstrate that he was reasonably diligent in learning of TILA's statutory and

13  regulatory requirements.

14          **b. TILA Claim for Rescission**

15          TILA also gives borrowers the right to rescind the loan agreement if the lender fails to disclose

16  important terms or forms.  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998).  The borrower's right

17  to rescission "expire[s] three years after the date of consummation of the transaction or upon the sale of

18  the property [at a foreclosure sale], whichever is first," even if the lender has failed to provide the

19  required disclosures.  15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); *Mehta v. Wells Fargo Bank, N.A.*,

20  737 F. Supp. 2d 1185, 1192 (S.D. Cal. 2010).  Contrary to Plaintiff's argument that the one-year statute

21  of limitations applies in addition to the three-year limitations period, section 1635(f) is a statute of

22  repose that completely extinguishes the right of rescission after three years and thereby deprives the

23  courts of jurisdiction following this period.  *Beach*, 523 U.S. at 412; *Miguel v. Country Funding Corp.*,

24  309 F.3d 1161, 1164 (9th Cir. 2002).

25          Although the applicability of equitable tolling often "depends on matters outside the pleadings,"

26  a district court may dismiss a claim "[i]f the running of the statute is apparent on the face of the

27  complaint."  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006); *Jablon v. Dean*

28  *Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  Even if the three-year statute of limitations were

1  applicable, the TILA claim would have been time barred as of March 2009.  Because the Complaint was

2  not filed under June 25, 2010, Plaintiff's cause of action under TILA fails to state a claim upon which

3  relief can be granted.  The Court therefore GRANTS Defendants' motion to dismiss with leave to

4  amend.

5  *6. Count Six: RESPA*

6        Plaintiff's sixth cause of action alleges that Defendants PNC, National City, and GMAC violated

7  the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. §§ 2601-17 (2011), in three respects: (1)

8  failing to notify Plaintiff of the transfers of the loan for servicing; (2) failing to properly comply with

9  disclosure requirements at the time of closing; and (3) failing to respond within 60 days to a Qualified

10 Written Request ("QWR").  (FAC ¶¶ 78-87.)  As an initial matter, alleging a breach of these RESPA

11 duties alone is insufficient to state a claim for relief.  At a minimum, Plaintiff must also allege that the

12 breach resulted in actual damages.  *Sitanggang v. Countrywide Home Loans, Inc.*, 419 F. App'x 756,

13 757 (9th Cir. 2011); *Eronini v. JP Morgan Chase Bank NA*, 368 F. App'x 841, 842 (9th Cir. 2010);

14 *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1175 (E.D. Cal. 2010).  Even though Plaintiff's

15 RESPA cause of action is deficient for failure to allege actual damages, the Court will address the

16 specific RESPA claims alleged.

17        **a. Failure to Provide Notice of Transfers of the Loan for Servicing**

18        Under section 2605(b)(1) of RESPA, "[e]ach servicer of any federally related mortgage loan

19 shall notify the borrower in writing of any assignment, sale or transfer of the servicing of the loan to any

20 other person."  12 U.S.C. § 2605(b)(1).  However, the facts alleged here fail to state a claim under

21 RESPA for the same reason the plaintiff's RESPA claim failed in *Delino v. Platinum Community Bank*,

22 628 F. Supp. 2d 1226, 1232 (S.D. Cal. 2009).  *See also Edwards v. Wachovia Mortg.*, No. 10cv1763

23 WQH (POR), 2011 WL 4591907, at *3 (S.D. Cal. Oct. 4, 2011).  In *Delino*, the plaintiff alleged that the

24 defendant lenders had failed to notify him of the transfer of the loan in violation of the statute.  628 F.

25 Supp. 2d at 1232.  Judge Huff concluded that the plaintiff failed to state a cause of action under section

26 2605(b)(1) because the plaintiff did not specifically allege which defendant failed to give such notice,

27 when the alleged transfer took place, which entities were involved in the transfer, and therefore, which

28 entity had the duty to notify the plaintiff.  *Id.*; *see* 12 U.S.C. § 2605(b), (c) (imposing different notice

1   requirements on transferors and transferees of loans).  The *Delino* court also found the complaint

2   deficient because the plaintiff failed to allege that the defendants were qualified "servicers" under the

3   statute.  *Id.*

4       Like the plaintiff in *Delino*, Plaintiff alleges that Defendants failed to notify him when his loan

5   was transferred for servicing.  (FAC ¶ 81.)  Plaintiff also claims that he does not know which Defen-

6   dants was the servicer of the loan at any given time, but that he "believe[s] that each of the Defendants

7   were a loan servicer at different times with the initial loan servicer being Defendant PNC."  (FAC §

8   81.)  Just as the *Delino* court reasoned, the allegations in the FAC here are conclusory and fail to plead

9   specific facts regarding which Defendant had the duty to notify Plaintiff and whether the Defendants

10  were servicers under the statute.  Thus, Plaintiff has failed to allege sufficient facts to support the claim

11  that Defendants PNC, National City, and GMAC violated the transfer notice requirement under RESPA.

12      **b. Failure to Provide Disclosures at Closing**

13      Although Plaintiff does not specify which statutory provision supports his claim that Defendants

14  failed to comply with disclosure requirements at the closing of the property, section 2604 provides

15  various disclosure requirements for lenders under RESPA.  12 U.S.C. § 2604.  However, in *Delino*, the

16  district court explained that "[s]ection 2604 does not provide a private civil remedy … unlike [section]

17  2605, which does provide that 'whoever fails to comply with any provision of this section shall be liable

18  to the borrower for each such failure.'"  *Delino*, 628 F. Supp. 2d at 1232 (quoting 12 U.S.C. § 2605(f)).

19  The weight of authority has reached the same conclusion regardless of which subsection of section 2604

20  is at issue.  *See, e.g.*, *Collins v. FMHA-USDA*, 105 F.3d 1366, 1367-68 (11th Cir. 1997) ("[T]here is no

21  private civil action for a violation of 12 U.S.C. § 2604(c), or any regulations to it."); *Alley v. Aurora*

22  *Loan Servs. LLC*, No. 10-cv-02163-REB-CBS, 2011 WL 3799035, at *13 (D. Colo. July 21, 2011);

23  *Angel v. BAC Home Loan Servicing*, No. 10-00240 HG/LEK, 2010 WL 4386775, at *7 (D. Haw. Oct.

24  26, 2010); *Spurlock v. Carrington Mortg. Servs., Inc.*, No. 09cv2273-MMA (JMA), 2010 WL 3069733,

25  at *9 (S.D. Cal. Aug. 4, 2010).  Accordingly, Plaintiff's RESPA claim for failure to provide disclosures

26  at closing is not cognizable.

27      **c. Failure to Respond to QWR**

28

11

1    Lastly, Plaintiff alleges that Defendants violated RESPA, section 2605(e)(2), by "failing and

2    refusing to provide a written explanation or response to Plaintiff's [QWR] not later than 60 days after

3    receipt of the request." (FAC ¶ 83.) A QWR is a "written request from the borrower … for information

4    relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). Plaintiff's conclusory allegation is

5    insufficient to support this claim because there are no facts to suggest that the QWR met the statutory

6    requirements, including "a statement of the reasons for the belief of the borrower, to the extent

7    applicable, that the account is in error or provides sufficient detail to the servicer regarding other

8    information sought by the borrower." *Id.* § 2605(e)(1)(B)(ii).

9    Without alleging more, the simple assertion that Defendants failed to comply with the statute is

10   not enough. *See, e.g.*, *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1175 (E.D. Cal. 2010).

11   For example, in *Delino*, the court dismissed the plaintiff's RESPA claim for failing to respond to a

12   QWR because the plaintiff did "not allege to whom specifically Plaintiff made [QWR's], when such

13   requests were made, how Defendants failed to respond to such requests, if the 60 day statutory period

14   for the response has [already] lapsed, or how [the lender] meets the statutory definition of a 'servicer.'"[3]

15   628 F. Supp. 2d at 1231-32. Likewise, Plaintiff's claim is devoid of any facts relating to the QWR, and

16   therefore fails to state a claim upon which relief can be granted. Therefore, the Court GRANTS

17   Defendants PNC, National City, and GMAC's motions to dismiss the sixth cause of action with leave to

18   amend.

19   *7. Count Seven: California Financial Code*

20   Plaintiff's seventh cause of action alleges that Defendants PNC, National City, and GMAC

21   violated section 50505 of the California Financial Code because they violated RESPA, as discussed in

22   the preceding cause of action. (FAC ¶¶ 88-90.) Section 50505 provides that any person who violates

23   any provision of RESPA or its regulations has also violated section 50505 of the California Residential

24   Mortgage Lending Act. Cal. Fin. Code § 50505 (2010). Because the RESPA cause of action fails, this

25   claim also fails. The Court therefore GRANTS Defendants' motions to dismiss the seventh cause of

26   action with leave to amend.

27

28   [3] Even though the plaintiff in *Delino* had attached copies of QWR's allegedly sent to the lenders, this was still insufficient to remedy the pleading deficiencies in the complaint. 628 F. Supp. 2d at 1232.

1  //

2  //

3  *8.  Count Eight: Fraud*

4        Plaintiff's eighth cause of action alleges that Defendants PNC, National City, and GMAC acted

5  fraudulently by representing that they were participants in the HAMP program and that they misrepre-

6  sented to Plaintiff that he would be able to stay in his house and obtain a loan suitable for his needs.

7  (FAC ¶¶ 91-101.)  However, this claim fails because Plaintiff has not alleged the elements of this fraud

8  claim with particularity as required by Federal Rule of Civil Procedure 9(b).  *See Swartz*, 476 F.3d at

9  764-65.  The five elements of fraud are: "'(a) misrepresentation (false representation, concealment, or

10  nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d)

11  justifiable reliance; and (e) resulting damage.'"  *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003)

12  (quoting *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)); *accord Philipson & Simon v. Gulsvig*,

13  154 Cal. App. 4th 347, 363 (2007).

14        Moreover, in cases involving multiple defendants, the plaintiff must, "at a minimum, identify the

15  role of *each defendant* in the alleged fraudulent scheme."  *Yazdanpanah,* 2009 U.S. Dist. LEXIS

16  111557, at *8; *Swartz*, 476 F.3d at 764-65.  Furthermore, when asserting a fraud claim against a

17  corporation, Plaintiff "must state the time, place, and specific content of the false representations as well

18  as the [specific] identities of the parties to the misrepresentation."  *Odom v. Microsoft Corp.*, 486 F.3d

19  541, 553 (9th Cir. 2007) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393,

20  1401 (9th Cir. 1986)); *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1024 (N.D. Cal.

21  2009).  Plaintiff's fraud claim lacks the particularity required by Rule 9(b) because the FAC fails to

22  allege the elements of fraud with respect to each Defendant and does not mention the names of any

23  persons who made the allegedly fraudulent representations.  As a result, the Court GRANTS Defen-

24  dants' motions to dismiss the eighth cause of action with leave to amend.

25  *9.  Count Nine: Unfair Debt Collection Practices*

26        Plaintiff's ninth cause of action alleges that Defendants PNC, National City, and GMAC

27  engaged in unfair debt collection practices in violation of the Fair Debt Collection Practices Act

28  ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (2010), and the Rosenthal Fair Debt Collection Practices Act

11cv1322

("RFDCPA"), Cal. Civ. Code § 1788 *et seq.* (2001).  (FAC ¶¶ 102-06.)  Plaintiff alleges that Defendants acted unlawfully in the following ways: calling Plaintiff and threatening to take his home, falsely stating the amount of the debt, increasing the amount of a debt by including amounts that are not permitted by law or contract, and using unfair and unconscionable means in an attempt to collect a debt.  *Id.*

However, this claim fails because Plaintiff does not allege that Defendants are debt collectors or that foreclosure pursuant to a deed of trust constitutes debt collection as required by both statutes.  15 U.S.C. § 1692a(6); Cal. Civ. Code § 1788.2(c); *see Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F. Supp. 2d 1191, 1197 (E.D. Cal. 2009) (holding that foreclosure pursuant to a deed of trust does not constitute debt collection under the RFDCPA); *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) (finding that plaintiffs had not pled an FDCPA claim because foreclosing on a property pursuant to a deed of trust is not collection of a debt within the meaning of the FDCPA).  The FAC also fails to provide sufficient factual detail regarding the Defendants' objectionable actions.  The Court therefore GRANTS Defendants' motions to dismiss the ninth cause of action with leave to amend.

### 10. Count Ten: Civil Code § 2923.5

In his tenth cause of action, Plaintiff alleges that Defendants PNC and National City failed to comply with the due diligence requirements in section 2923.5(a) of the California Civil Code.  (FAC ¶¶ 107-12.)  This provision prohibits mortgagees, trustees, beneficiaries, or authorized agents from filing a notice of default on an owner's principal residence until thirty days after contact is made with the owners or thirty days after satisfying the statutory due diligence requirements. Cal. Civ. Code § 2923.5(a) (2010).  Thus, section 2923.5 confers a "right to be contacted to 'assess' and 'explore' alternatives to foreclosure *prior* to default."  *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 225 (2010); *accord Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal. App. 4th 1602, 1616 (2011).

Plaintiff alleges that Defendants have violated this statute by "[f]ailing to contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid  foreclosure."  (FAC ¶ 111.)  However, in the FAC, Plaintiff describes several occasions where Defendants had communicated with Plaintiff to discuss a possible loan modification.   (FAC ¶¶ 25-33.)  Moreover, Defendants submitted a declaration of compliance with section 2923.5 when Defendants recorded the Notice of Default against Plaintiff's property.  (Doc. 14-2, Exh. 2.)

1    Although Plaintiff argues that this declaration was insufficient to meet the statutory requirements

2    because Defendants did not list the specific individual contacts made with Plaintiff, the California Court

3    of Appeal in *Mabry* explained that the statute only requires that the declaration track the language of the

4    statute itself.  185 Cal. App. 4th at 235.

5         Even if Plaintiff had alleged sufficient facts to demonstrate a violation of this section, the only

6    remedy available to a homeowner is a postponement of the sale before it happens.  *E.g.*, *Hamilton*, 195

7    Cal. App. 4th at 1616; *Mabry*, 185 Cal. App. 4th at 235; *see also* Cal. Civ. Code §§ 2923.5, 2924g.

8    Indeed, this narrow scope of section 2923.5 is necessary in order to avoid preemption by federal law.

9    *Mabry*, 185 Cal. App. 4th at 226-32; *Hamilton*, 195 Cal. App. 4th at 1616; *cf. Rodriguez v. JP Morgan*

10   *Chase & Co.*, 809 F. Supp. 2d 1291, 1295 (S.D. Cal. 2011) (holding that section 2923.5 has been

11   completely preempted by the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 *et seq.*, where the

12   lender is a federally chartered savings bank at the time the loan was originated).  Under section 2923.5,

13   Plaintiff has no remedy because the sale has already occurred.  (Doc. 14-2, Exh. 5.)  Alternatively,

14   Plaintiff has no remedy under this provision because federal law has preempted it.  *See Rodriguez*, 809

15   F. Supp. 2d at 1295.  Accordingly, the Court GRANTS Defendants PNC and National City's motion to

16   dismiss the tenth cause of action with prejudice.

17   ***11. Count Eleven: Civil Code § 2923.6***

18        Plaintiff's eleventh cause of action against Defendants PNC and National City alleges a violation

19   of section 2923.6 of the California Civil Code.  Section 2923.6 expresses the intent of the California

20   Legislature for "the mortgagee, beneficiary, or authorized agent to offer the borrower a loan modifica-

21   tion . . . if such a modification . . . is consistent with its contractual or other authority."  Cal. Civ. Code §

22   2923.6 (2010).  This section confers no substantive rights on borrowers, but simply expresses the

23   legislative hope that lenders will offer loan modifications.  *Connors v. Home Loan Corp.*, No. 08cv1134,

24   2009 WL 1615989, at *8 (S.D. Cal. June 9, 2009); *Farner v. Countrywide Home Loans*, No. 08cv2193,

25   2009 WL 189025, at *2 (S.D. Cal. Jan. 26, 2009); *Hamilton*, 195 Cal. App. 4th at 1617; *Mabry*, 185 Cal.

26   App. 4th at 222.  Because lenders have no duty under this provision to agree to a loan modification

27   under this section, there is no private cause of action available. *Rodriguez*, 809 F. Supp. 2d at

28   1296; *Hamilton*, 195 Cal. App. 4th at 1617; *Mabry*, 185 Cal. App. 4th at 222.

11cv1322

1     Plaintiff, impliedly conceding that the section does not provide a private cause of action, argues

2     that section 2923.6 is actionable when read in conjunction with section 17200 of the California Business

3     and Professions Code.  However, a statute only creates a private right of action if the Legislature so

4     intended.  *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 62 (1999).  Because the

5     Legislature merely expressed an intent to encourage loan modifications, it did not "directly"or "in clear,

6     understandable, unmistakable terms" provide a private right of action.  *Id.*; *see Connors*, 2009 WL

7     1615989, at *8; *Mabry*, 185 Cal. App. 4th at 222.  Therefore, the Court GRANTS Defendants PNC and

8     National City's motion to dismiss with prejudice.

9     *12.  Count Twelve: Impossibility of Performance*

10    Plaintiff's twelfth cause of action for impossibility of performance is asserted against Defendants

11    PNC and National City.  (FAC ¶¶ 117-18.)  Impossibility of performance is an affirmative defense to an

12    action for breach of contract under California law.  *Monroe v. Oakland Unified Sch. Dist.*, 114 Cal. App.

13    3d 804, 813 (1981); *Hensler v. Los Angeles*, 124 Cal. App. 2d 71, 83 (1954).  Thus, it is not an

14    independent cause of action as Plaintiff has alleged in the FAC.  *See e.g.*, *Dinsmore-Thomas v.*

15    *Ameriprise Fin., Inc.*, No. SACV 08-587 DOC (PLAx), 2009 WL 2431917, at *11 (C.D. Cal. Aug. 3,

16    2009); *Archundia v. Chase Home Finance LLC*, No. 09cv00960-H (AJB), 2009 WL 1796295, at *5

17    (S.D. Cal. June 23, 2009); *Rosales v. Downey Sav. & Loan Ass'n*, No. 09cv39 WQH (AJB), 2009 WL

18    514229, at *8 (S.D. Cal. Mar. 2, 2009).

19    Even if Plaintiff had pleaded a cause of action to void the contract for impossibility of perfor-

20    mance, the facts as alleged do not support such a claim.  Plaintiff supports this claim by stating that

21    "Defendants are guilty of malice, fraud or oppression" because they allegedly misrepresented to Plaintiff

22    that he would qualify for a refinance loan and because they allegedly submitted false loan documents.

23    (FAC ¶ 118.)  To the extent that Plaintiff seeks to recover on the basis that Defendants committed

24    fraud, this cause of action is duplicative and fails for the reasons discussed above, under the eighth cause

25    of action.

26    Furthermore, to the extent that Plaintiff seeks to recover because Defendants knew or should

27    have known that Plaintiff was unable to perform under the original loan or the refinance loan, this claim

28    still fails to state a cause of action.  (FAC ¶¶ 40, 42, 118.)  For Plaintiff to excuse his nonperformance of

11cv1322

the contract, his alleged impossibility of performance "must attach to the nature of the thing to be done and not the inability of the obligor to do it." *Hensler*, 124 Cal. App. 2d at 83. Plaintiff's allegations that he was unable to perform under the contract is insufficient to properly plead that it would be impossible for *anyone* to perform under the contract. *See, e.g.*, *Archundia*, 2009 1796295, at * 5; *Rosales*, 2009 WL 514229, at *8. Accordingly, the Court GRANTS Defendants PNC and National City's motion to dismiss the twelfth cause of action with leave to amend.

### 13. Count Thirteen: Breach of Contract and Breach of Duty of Good Faith and Fair Dealing

In his thirteenth cause of action, Plaintiff first presents a breach of contract claim against Defendants PNC, National City, and GMAC based on two theories: first, that Plaintiff is an intended third party beneficiary of the Home Affordable Modification Program Servicer Participation Agreement (" HAMP SPA"), (FAC ¶¶ 120-23); and second, that Plaintiff has an enforceable individual contract with Defendants. (FAC ¶¶ 123-30.) Plaintiff also argues that the Defendants breached the implied covenant of good faith and fair dealing in their performance of the contract. (FAC ¶¶ 119-33.)

#### a. Third Party Beneficiary Claim Under HAMP SPA

In October 2008, Congress passed the Emergency Economic Stabilization Act ("EESA") to help restore stability to the financial system and to preserve homeownership. 12 U.S.C. § 5201 (2008). The EESA also established the Troubled Asset Relief Program ("TARP"), which was intended to reduce foreclosures. 12 U.S.C. §§ 5211, 5225 (2008). Under TARP, the Treasury Department established HAMP, a voluntary program to encourage lenders to modify mortgages and prevent defaults and foreclosures. *Williams v. Geithner*, No. 09-1959 ADM/JJG, 2009 WL 3757380, *2 (D. Minn. Nov. 9, 2009). Plaintiff alleges, and Defendants do not contest, that they are all signed participants of HAMP and have signed the SPA. (FAC ¶ 9.)

Plaintiff argues that because he is an intended third party beneficiary under the HAMP SPA, he is permitted to sue Defendants for breach of contract. (FAC ¶ 120-23.) Plaintiff cites two unreported district court opinions holding that a borrower can be a third party beneficiary to the HAMP SPA.[4] *See*

---

[4] Plaintiff also relies on *Speleos v. BAC Home Loan Servicing, L.P.*, 755 F. Supp. 2d 304 (D. Mass. 2010), as case authority holding that a borrower is a third party beneficiary under HAMP SPA. However, the *Speleos* court did not reach this conclusion, but rather held that the HAMP guidelines were not controlling on the breach of contract claim because the loan was entered into prior to the

1   *Marques v. Wells Fargo Home Mortg., Inc.*, No. 09-cv-1985-L (RBB), 2010 WL 3212131 (S.D. Cal.

2   Aug. 12, 2010); *Reyes v. Saxon Mortg. Servs., Inc.*, No. 09cv1366 DMS (WMC), 2009 WL 3738177

3   (S.D. Cal. Nov. 5, 2009).  However, most district courts in the Ninth Circuit, as well as the Seventh and

4   Eleventh Circuit Courts of Appeals, have held that even though entering into the HAMP SPA imposes

5   certain obligations on participating servicers and lenders to take steps to avoid foreclosures, agreements

6   under the HAMP SPA do not provide an express or implied private right of action for borrowers as third

7   party beneficiaries.  *See, e.g.*, *Wigod v. Wells Fargo Bank, N.A.*, No. 11-1423, 2012 WL 727646, at *15

8   (7th Cir. Mar. 7, 2012); *Nelson v. Bank of Am., N.A.*, 446 F. App'x 158, 159 (11th Cir. 2011); *Morales v.*

9   *Chase Home Fin. LLC*, No. C 10-02068 JSW, 2011 WL 1670045, at *9 (N.D. Cal. Apr. 11, 2011);

10  *Hoffman v. Bank of Am.*, No. C 10-2171 SI, 2010 WL 2635773, at *3 (N.D. Cal. June 30, 2010);

11  *Escobedo v. Countrywide Home Loans, Inc.*, No. 09cv1557 BTM (BLM), 2009 WL 4981618, at *2-3

12  (S.D. Cal. Dec. 15, 2009).

13         Moreover, the conclusion that there is no private right of action under HAMP SPA is in accord

14  with the Ninth Circuit's reasoning in *Klamath v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999).  *See*

15  *Hoffman*, 2010 WL 2635773, at *3; *Escobedo*, 2009 WL 4981618, at *1-2.  In *Klamath*, the court

16  explained that in order for a third party to recover on a contract, he must be able to show that the

17  contract was made with the "express or implied intention of the parties to the contract to benefit the third

18  party."  204 F.3d at 1210.  As district courts have recognized, it would be unreasonable for a qualified

19  borrower seeking a loan modification to rely on a servicer's agreement under HAMP as granting him

20  enforceable rights because the agreement does not actually require that the servicer modify all eligible

21  loans.  *See, e.g.*, *Hoffman*, 2010 WL 2635773, at *4; *Escobedo*, 2009 WL 4981618, at *6.  Accordingly,

22  Plaintiff has failed to state a cause of action for breach of contract predicated on the HAMP SPA.

23         **b.  Individual Contract**

24         To the extent Plaintiff claims he has an individual contract with Defendants apart from the

25  HAMP SPA, Plaintiff's claim fails to sufficiently allege a cause of action for breach of contract.  In

26  order to establish a claim for breach of contract in California, a plaintiff must prove: (1) the existence of

27  a contract; (2) plaintiff's performance of the contract or excuse for non-performance; (3) defendant's

28

effective date of the HAMP guidelines.  755 F. Supp. 2d at 312.

1    breach of the contract; and (4) the resulting damage to the plaintiff. *Lortz v. Connell*, 273 Cal. App. 2d

2    286, 290 (1969). An enforceable contract requires, among other things, valid consideration and a

3    meeting of the minds as to the essential terms and conditions to which the parties have agreed to be

4    bound. *See Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007) (citing

5    Cal. Civ. Code § 1550); *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 213 (2006).

6           Plaintiff alleges that the trial payment plans, as a temporary loan modification, provided to him

7    by Defendants constituted offers, which were accepted by Plaintiff when he submitted his loan

8    documentation and sent it back to Defendants. (FAC ¶¶ 123-30.) Plaintiff claims that he made the trial

9    payments as required and that this constituted consideration. (FAC ¶ 127.) Apart from Plaintiff's

10   general allegations about offer and acceptance, it is difficult to determine whether Plaintiff has alleged

11   the existence of a contract with GMAC and what constitutes the terms of the contract as to each

12   Defendant. Under the terms of the first trial payment plan, National City required Plaintiff to make

13   three modified payments, which Plaintiff claims he timely made. (FAC ¶ 26.) However, after Plaintiff

14   made the three timely payments under the trial payment plan, National City allegedly refused to approve

15   a permanent loan modification. (FAC ¶ 27.) After sending the three trial payments to National City,

16   Plaintiff alleges that he sent three timely payments to GMAC. (FAC ¶ 29.) Plaintiff then alleges that he

17   entered into a second trial payment plan with National City and made two timely payments. (FAC ¶

18   31.) Following an alleged transfer of the loan, Plaintiff then asserts that he continued to make payments

19   but it is unclear whether Plaintiff alleges that these payments were required by the trial payment plan.

20   (FAC ¶¶ 32-33.)

21          The pleading for this cause of action is insufficient to support a claim for relief because the

22   factual allegations are too vague and ambiguous regarding what the terms of the contracts were as to

23   each Defendant and, therefore, whether Plaintiff adequately performed under the terms of the contracts.

24   In particular, Plaintiff has failed to present any facts regarding a contract with GMAC, other than the

25   allegation that Plaintiff made two payments to GMAC (FAC ¶ 29), and the unsupported conclusion that

26   GMAC offered Plaintiff a trial payment plan. (FAC ¶ 124-25.) In fact, Plaintiff has only alleged that he

27   sent a loan modification request to National City, but not to GMAC. (FAC ¶¶ 26-31.)

28

11cv1322

1   Moreover, Plaintiff appears to claim that National City breached its contracts with Plaintiff,

2   under the trial payment plan, by failing to either continue the trial payment plan or grant him a

3   permanent modification.  (FAC ¶ 131.)  However, assuming the existence of a contract for the trial

4   payment plan, Plaintiff has not alleged any facts to support the claim that this trial payment plan

5   compelled National City to approve a permanent modification or to refrain from exercising its rights to

6   foreclosure.  As alleged, Plaintiff fully performed under the first trial payment plan with National City,

7   by making three timely payments, which National City apparently accepted.  (FAC ¶ 26.)  Plaintiff has

8   not alleged any facts regarding the number of payments, or the duration of the temporary modification,

9   required under the second trial payment plan with National City.  Therefore, it is unclear whether

10  Plaintiff alleges that he fully performed under the terms of the contract.  (FAC ¶¶ 31-33.)

11            **c. Breach of the Implied Covenant of Good Faith and Fair Dealing**

12          Plaintiff appears to assert a cause of action for breach of the implied covenant of good faith and

13  fair dealing along with his breach of contract cause of action.  (FAC ¶¶ 119-33.)  Every contract

14  "imposes upon each party a duty of good faith and fair dealing in its performance and enforcement."

15  *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 798 (2008).  In order to assert this claim,

16  Plaintiff must plead "the existence of a contractual obligation, along with conduct that frustrates the

17  other party's rights to benefit from the contract."  *Id.* at 1021-22.  Because the Court finds that Plaintiff

18  has failed to assert a cause of action for breach of contract, the claim for breach of the implied covenant

19  of good faith and fair dealing also fails.  The Court therefore GRANTS Defendants' motions to dismiss

20  the thirteenth cause of action with leave to amend.

21  ***14.  Count 14: Promissory Estoppel, in the Alternative***

22          As an alternative to the breach of contract claim, Plaintiff asserts that the alleged representation

23  that he would receive a permanent HAMP modification gives rise to a claim for promissory estoppel.

24  (FAC ¶¶ 134-40.)  There are four elements for a promissory estoppel claim: (1) a promise that is clear

25  and unambiguous; (2) reliance by the promisee; (3) the reliance must be reasonable and foreseeable; and

26  (4) the party asserting the estoppel must be injured by his reliance.  *Advanced Choices, Inc. v. State*

27  *Dep't of Health Servs.*, 182 Cal. App. 4th 1661, 1672 (2010).  "A promise is an indispensable element"

28

11cv1322

for asserting a promissory estoppel claim.  *Garcia v. World Savings, FSB*, 183 Cal. App. 4th 1031, 1044-45 (2010).

Plaintiff alleges that Defendants "by way of [their] trial plans, made a representation to Plaintiff that if he returned the trial plan executed and with supporting documentation, and made his trial plan payment, he would receive a permanent HAMP modification."  (FAC ¶ 135.)  Although lenders have no obligation to offer permanent loan modifications under HAMP, s*ee Hoffman*, 2010 WL 2635773, at *4; *Escobedo*, 2009 WL 4981618, at *3, Plaintiff could establish that Defendants made a promise to Plaintiff that he would receive a permanent loan modification.  Such a promise may be actionable under a promissory estoppel claim.  However, there are no substantiating facts in the FAC to support the allegation that Defendants made such a promise.  Plaintiff asserts no specific allegations regarding when such representation was made or whether it was written or oral.  (FAC ¶ 135.)  As discussed above, Plaintiff appears to allege that National City entered into two separate trial payment plans with Plaintiff, but Plaintiff fails to allege when the representation was made.  Just as Plaintiff failed to allege whether GMAC entered into a trial payment plan with Plaintiff, Plaintiff has also failed to specify whether and how GMAC made a similar representation regarding permanent modification.  The Court therefore GRANTS Defendants' motions to dismiss the fourteenth cause of action with leave to amend.

### 15. Count Fifteen: Wrongful Foreclosure

Plaintiff's fifteenth cause of action for wrongful disclosure is based on Defendants PNC, National City, and GMAC's alleged failure to record an assignment of the deed of trust securing his loan and their failure to post notice of sale on the subject property in violation of California law.  (FAC ¶¶ 141-57.)

#### a.  Failure to Record Assignment of the Deed of Trust

First, Plaintiff alleges that Defendants violated section 2932.5 of the California Civil Code because the party who foreclosed on his property was not the real party in interest entitled to exercise that remedy since Defendants failed to properly record assignment of the Deed of Trust.  (FAC ¶ 148.) Section 2932.5 provides that "[t]he power of sale may be exercised by the assignee *if the assignment is duly acknowledged and recorded*."  Cal. Civ. Code § 2932.5 (emphasis added).  As a result, Plaintiff claims that Defendants also violated section 3301 of the California Commercial Code because the

11cv1322

1   foreclosure sale was not conducted by a "person entitled to enforce" the loan instrument.  Cal. Comm.

2   Code § 3301 (2012).  In this case, the Deed of Trust lists National City as trustee.  (Doc. 14-2, Exh. 1.)

3   However, the Notice of Default was sent by Cal-Western Reconveyance Corp. ("CWRC"), as an agent

4   of the trustee, but then the Notice of Trustee's Sale indicated that the foreclosure sale would be

5   conducted by CWRC, as trustee.  (Doc. 14-2, Exhs. 2, 3.)  As Plaintiff argues in his opposition,

6   Defendants have neither alleged nor provided documentation indicating that the assignment to CWRC

7   was duly recorded prior to the Notice of Trustee's Sale.

8          Nevertheless, this claim still fails because section 2932.5 only applies to mortgages and not

9   deeds of trust.  Although this distinction may be described as "outdated," *In re Salazar*, 448 B.R. 814,

10   821 (S.D. Bankr. 2011), it has been recognized by California courts since 1908, and the Legislature has

11   declined to amend the statute.  *Calvo v. HSBC Bank USA, N.A.*, 119 Cal. App. 4th 118, 122 (2011);

12   *Stockwell v. Barnum*, 7 Cal. App. 413 (1908).  Plaintiff relies on the bankruptcy court decision of *In re*

13   *Salazar* for holding that section 2932.5 should also apply to mortgages.  However, that decision was

14   recently reversed and remanded by the district court, which emphasized that California courts have

15   maintained that section 2932.5 does not apply to deeds of trust.  *In re Salazar*, No. 11-cv-907-L (BLM),

16   2012 WL 896214, *4 (S.D. Cal. Mar. 15, 2012).  Instead, section 2924 *et seq.* of the California Civil

17   Code provides the proper guidelines for nonjudicial foreclosures.  *See Calvo*, 119 Cal. App. 4th at 125.

18   Accordingly, as to the wrongful foreclosure claim under section 2932.5 of the California Civil Code and

19   section 3301 of the California Commercial Code, the Court GRANTS Defendants' motion to dismiss

20   with prejudice.

21          **b. Failure to Comply with Statutory Notice Requirements**

22          Plaintiff further alleges a claim for wrongful foreclosure based on Defendants' failure to comply

23   with statutory notice requirements governing nonjudicial foreclosure sales under sections 2934a(a)(4)(e)

24   and 2924f(b)(1) of the California Civil Code.[5]  (FAC ¶¶ 153-54.)  These statutes provide that any sale

25   conducted without prior written notice of any substitution of trustee to the borrower as well as prior

26   written notice of the sale is void.  Cal. Civ. Code §§ 2924f(b)(1), 2934a(b), (c).  Apart from restating the

27

28          [5] Although Plaintiff cites to section 2934a(a)(4)(3) in his FAC, there is no subsection (a)(4)(e) in
section 2934a, but Plaintiff apparently wishes to reference subsections (b) and (c), voiding any sale
conducted without prior written notice of any substitution of trustee.  Cal. Civ. Code § 2934a(b), (c).

11cv1322

1   words of the statutes, Plaintiff has not alleged sufficient facts to show that each Defendant failed to send

2   written notice of substitution of the trustee prior to sending notice of the foreclosure sale and how the

3   notice of sale failed to meet the statutory requirements.  Therefore, the Court GRANTS Defendants

4   PNC, National City, and GMAC's motions to dismiss the fifteenth cause of action with leave to amend.

5   //

6   **16. Count Sixteen: Unlawful, Unfair or Deceptive Practices**

7          In his sixteenth and final cause of action, Plaintiff alleges that Defendants PNC, National City,

8   and GMAC violated section 17200 of the California Business & Professions Code by fraudulently

9   committing all of the statutory and common law violations against Plaintiff's asserted rights discussed

10  above.  (FAC ¶¶ 158-64.)  However, to bring a claim under section 17200, a plaintiff must show either

11  an (1) "unlawful, unfair, or fraudulent business act or practice," or (2) "unfair, deceptive, untrue, or

12  misleading advertising."  *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1043 (2003) (quoting

13  Cal. Bus. & Prof. Code § 17200)).  In addition, Plaintiff must show an injury in fact and lost money as a

14  result of unfair competition.  Bus. & Prof. Code § 17200.  Finally, the claim must be supported by facts

15  described with reasonable particularity in order to meet the pleading standard of Rule 9(b).  *Kearns v.*

16  *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

17  1097, 1102-05 (9th Cir. 2003)).

18         In his sixteenth cause of action, Plaintiff has failed to plead with particularity any facts that

19  constitute unlawful, unfair, or fraudulent business practices, or facts showing unfair, deceptive, untrue,

20  or misleading advertising.  Moreover, this claim incorporates each of the allegedly unlawful acts as

21  alleged in the preceding causes of action to create a separate cause of action through section 17200.

22  Having found that Plaintiff failed to state a claim in the preceding fifteen causes of action, the Court

23  reaches the same conclusion here, by virtue of the reasoning detailed above.  The Defendants' motions

24  to dismiss the sixteenth cause of action is GRANTED with leave to amend.

25                                    **IV.**

26                               **CONCLUSION**

27         For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss. The tenth,

28  //

1  //

2  //

3  //

4  //

5  //

6   eleventh, and fifteenth causes of action are dismissed **with prejudice**. Plaintiff has thirty (30) days to

7  submit a Second Amended Complaint correcting the deficiencies noted herein for those claims

8  dismissed with leave to amend, only.  Failure to do so will result in the Court's dismissal of this case.

9

10  IT IS SO ORDERED.

11

12  DATED:  March 26, 2012

13  _____

14  Hon. Anthony J. Battaglia
    U.S. District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11cv1322